^ie ^h August, 1795, William Fiddy sold a house and lot of land in Broad street, to John-Holmes Smith for 1120Í. and took from Smith three bonds, each ^or 300^ an¿ a mortgage of the premises to secure the payment of them ; the first bond was payable on the 8th of August, 1797, the others on the 8th of August, 1798 and 1799, with interest $ the interest on the two last was payable annually. On the 8th of July, 1797, Fid-dy obtained a judgment on these bonds ; on the 30th of November, 1797, he entered into a deed, which after reciting Smith’s mortgage, the judgment obtained, that an execution had been issued and a levy made on the mortgaged premises, and John Holmes Smith’s liability to pay the debt, goes on in the following manner — “ And *13 whereas the said lot of land is also mortgaged to Mrs. Ann Lockwood by the said John H. Smith for a consi-derahle sum of money, which she is apprehensive she may lose altogether unless she can come in for a proportion of the said lot 5 and whereas it is apprehended she may save more by taking the lot to herself and satisfying the said William Fiddy the amount of his mortgage thereon 5 and in order to do which with safety she is desirous of having a good and sufficient assignment and transfer or conveyance from the said William Fid-dy to the said Ann Lockwood, or such other person as she may choose or nominate, and to her or his or their heirs, executors, &c. of the said three bonds, judgment thereon, and mortgage, and all his right and title thereto.5’ That Fiddy, in consideration of 45 8i. 6d. 7s. paid to him by Ann Lockwood, and good and approved notes for the balance of the debt due, (after deducting 100L on account of the cash payment and the short time the notes had to run, viz. 60, 90 and 120 days) agreed to accept as full payment of his mortgage and claim on the lot and house ; and on the said three notes being all fully paid and satisfied, but not before, to assign and transfer over the said judgment, mortgage, bonds and all his right and title to the same, to such person as aforesaid, with full and absolute authority to receive the same and act in the premises as the said assignee should think proper. He then enters into a covenant to execute the assignment according to the agreement. This deed, executed in the presence of two witnesses, was recorded on the 13th of January, 1798. On the 8th of December, 1/97, Ann Lockwood signed the following paper : — “ Whereas Dr.-Chouler has lent me his name on three notes for 501. 8s. lid. which I am to take up as they become due ; and in case I should not have fully sufficient to pay the same, know all whom it may concern, that I hereby agree to reimburse the said Dr. Chouler whatever disbursements should be incurred by him to obtain the money necessary to make up the deficiency of what I may have to advance towards the payment of the said three *14 notes ; and l further agree that the assignment of mortgage bond and judgment, agreed by Mr. Fiddy to be made to me or such person as I shall nominate, be made to the said Dr. Chouler, for his indemnification in the premises. Dec. 8, 1797.” (Signed,) « ANN Lockwood.”
On the 8tb March, 1798, Smith took the benefit of the insolvent debtor’s act, and in his schedule which contains but little property, inserted the house and lot as under mortgage to William Fiddy and Ann Lockwood. The mortgage to Ann Lockwood is dated in 1796, and was recorded in the same year. Fiddy having received payment of the balance of the debt due to him by Smith, the notes which Dr. Chouler had given for this balance having been taken up by him, assigned to him, Dr. Chouler, Smith’s bonds, mortgages and judgment by deed, dated on the 9th of May, 1799, and recorded on the 10th of July following. The four notes given by Dr. Chouler amounted, according to a statement in Fid-dy’s hand writing, to 5061. 8s. 9(1. it was stated by the complainant’s counsel, and assented to by the counsel for the defendants, that Fiddy had been absent from this country, and that it was after his return from the West-Indies he executed the deed dated 9th May, 1799. The examinations in writing of Judge Johnson and Mr. Booth were read, and Mr. Marshal and Mr. Lowe examined as witnesses. Mr. Booth having mentioned in his examination a book of Dr. Chouler, a long shop or day-book, one of Chouler’s executors, who was in Court, and whose declaration the defendant’s solicitor agreed to receive, said that he had come into possession «fall Dr. Chouler’s books, and that there was not among them any one of the description mentioned by the witness. Mr. Neilson, a witness on the part of the complainants, said that in 1799 or 1800, Fiddy went into the Clerk’s office, to enter up satisfaction, but notice having been given not to enter it, Mr. Drayton refused to do it. That after Smith’s failure, Ann Lockwood signed Ann Lockwood although she went by the name of Ann Smith. Mr. Marshal, vendue roaster, says that *15 in 1797, Smith was a man of credit, had a store of goods, and that Booth trusted him. Witness sold the house by order of Mr. Booth on the 11th of September, 1800. — Ann Lockwood bought it and refused to comply with the terms of sale : it was afterwards resold. Judge son says he has but an indistinct recollection of the transactions, stated in the interrogatories put to him ; that Chouler told him he knew Ann Lockwood and Ann Smith to be the same person. Mr. Booth says that soon after Smith was admitted to the benefit of the insolvent debtor’s act, he had a conversation with the late Br. Chouler in relation to the claim in dispute; that Chou-ler shewed him a long shop or day-book containing an account of the transaction relating to the notes ; that he acknowledged to have received monies at different times which amo unted to the extinguishrn ent of three of the notes ; that the witness offered to pay the note said by Chouler to be due with simple interest; that Chouler refused to receive payment, saying-that he had paid five per cent, for money he had lent to Smith; that the claim of Chouler was not rendered to the assignees until March, 1804, nor until the assignees advertised a dividend ; that Fiddy executed satisfaction in due form of law on his judgment against Smith prior to the month of May, 1799 ; that the Clerk would not enter.it (on account of a notice from Mr. Pringle, defendant’s attorney, forbidding Mm to make the entry ; that Chouler has not uniformly claimed the same sum of money ; that Lowe was present with him at Chouler’s house, when Chouler shewed him the book mentioned, and said he had received sundry monies to pay the notes given by him to William Fiddy. Lowe being examined, says he recollects having been at Chouler’s house with Mr. Booth, but recollects nothing of the book or the conversation said to have passed respecting the three notes. Chouler received the judgment he obtained from Fid-dy and sold the house under it on the 7th of January, 1800, and bought it himself. The sheriff refused to make him titles : a rule was served on him to shew cause *16 why he did not make them : the rule was dismissed. The assignees of Smith brought an action against Mo-ret to try titles to the house ¡ Moret held under Chouler and vouched him; a verdict was given in favor of the plaintiffs ; on the 31st of January, 1804, the assignees recovered rent for the house from Chouler ; Chouler had been put into possession of the house by Smith •, had let it to Moret and received rent from him, which he had afterwards to pay over to the assignees. The complainants claim reimbursement of their testator’s notes with interest, and also certain sums expended in building a kitchen, and repairs laid out on the mortgaged premises during the time they were in the possession of their testator.
It is contended on the part of the defendant, that the complainants are not entitled to any thing. That the agreement between Fiddy and Ann Smith, is fraudulent and void, it having been entered into with the privity of the complainants’ testator for the purpose of defrauding the creditors of Smith. That admitting the fairness and validity of this agreement, Ann Lockwood, alias Ann Smith had no right, being a feme covert, to direct or appoint the execution of the agreement to be made to the complainants’ testator. That Fiddy having previous to May, 1799, received full satisfaction of the judgment obtained by him in 1797, the house and lot Vested in 1798 in Smith’s assignees; and could not be affected by the subsequent assignment of Fiddy ; that Chouler’s claim was not rendered in due time to the assignees and is therefore barred. That the question of fraud or no fraud has been already before a court of common law and there decided.
The Court thinks it immaterial to enquire into the character of the transaction between Ann Smith alias Ann Lockwood and John H. Smith, or whether she was or was not his wife. Mrs. Lockwood or Smith took the deed of assignment from Fiddy, with a view it is stated, to save a sum of money which she says he owed her. It *17 is admitted that she did. If Chouler really knew Ann Lockwood to be Ann Smith and that she was the wife of Smith, it would not follow that he should lose any sums of money advanced on the bona fide debt due by Smith to Fiddy, and assigned by Fiddy to him : If Fiddy had not assigned his debt,would he not be entitled to the payment of it ? Chouler is his assignee, and as such entitled to all the rights Fiddy would have had under the mortgage, if no assignment of it had been made. Chouler advanced money, or gave his notes which he afterwards took up, which is the same thing, on the security of the mortgage to Fiddy. The notes were paid before satisfaction was given by Fiddy of the judgment on the bonds secured by the mortgage. Having z*eceiyed payment of the notes, Fiddy had no right afterwards to execute satisfaction on the judgment. Shall this tortious act, done probably at the instance of the assignees, or one of them (for Mr. Booth says that the satisfaction executed was left by him in the clerk’s office to bo entered) enure to their benefit ? The notes were given in 1797 at short dates : The assignment from Fiddy to Chouler, made in conformity with the deed of assignment from Fiddy to Ann Lockwood, was not executed until May, 1799 ; but the notes had been paid long before. The moment they wore paid, Chouler could in this court have compelled Fiddy to assign the mortgage ; he had then an equitable lien on it. It was probably owing to Fid-dy’s being out of the state that this assignment was not made sooner. The assignees of Smith knew in 1798, shortly after Smith swore off, of Chouler’s claim. Mr. Booth’s answer to the 2d interogatory, shews this : He says too that at this time, Chouler acknowledged to him that three of the four notes given by him had been extinguished by monies received from Smith or Ann Lockwood. Mr. Booth’s testimony was not taken until the 23d of February 1809, it cannot therefore be so much relied on as if it had been taken earlier. Lowe who is said to have been present when this acknowledgment was made by Chouler, recollects nothing of it, nor of the *18 book. The declaration of Choulcr’s executor ("which v WaS aS’reci* rccc^vo^ as evidence, by the counsel i'01' the defendants) that he did not find such a book as the one mentioned fay the witness among the hooks of his testator | the acknowledgment in the hand writing of Fiddy of his having received payment of Chouler’s notes from himself; the claim Chouler has preferred to a certain sum exceeding that mentioned by the witness, and which does not appear to have varied except when he received monies from Moret and had afterwards to pay them over to the assignees; are circumstances which •will not justify the court on the testimony of a single witness, under the circumstances attending it, in imputing fraud to a transaction which took place so many years ago. If Chouler received the monies he took up his notes with, from Smith or Mrs. Lockwood, it has not been proved.
Let it be referred to the master to report the sums paid by Chouler upon the debt to Fiddy, and the sums expended in building the kitchen and in necessary repairs. The sum of 264(. 3s. 4d. is not to be brought into the account.